| | |
|---|---|
| UNITED STATES OF AMERICA, | '05 APR 27 P3:05 |
| Plaintiff, | |
| v. | Case No. 05-CR120 |
| JULIE'S CAFÉ, LLC, | |
| Defendant. | |

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Tracy M. Johnson, Assistant United States Attorney, and the defendant, Julie's Café, LLC, by its duly authorized representative and by attorney Jeffrey A. Jazgar, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in one count of a two-count information which alleges a violation of Title 8, United States Code, Sections 1324a(a)(1)(A) and (f)(1).

3.    The defendant, by its duly authorized representative, has read and fully understands the charge contained in the information and fully understands the nature and elements of the crime with which it has been charged and the charge and the terms and conditions of the plea agreement have been fully explained to the defendant by its attorney.

4.    The defendant, by its duly authorized representative, voluntarily agrees to waive prosecution by indictment in open court.

5.  The defendant, by its duly authorized representative, voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

**The United States Attorney charges:**

1.  From 1998 until on or about June 15, 2004, in Brown County, in the Eastern District of Wisconsin, the defendant,

**JULIE'S CAFÉ, LLC,**

engaged in a pattern and practice of hiring aliens for employment in the United States, knowing that the aliens were unauthorized to work in the United States.

2.  At all times pertinent to this information:

    a.  Julie's Café, LLC was owned and operated by Stephen and Julie Metzler. Both Stephen and Julie Metzler are United States citizens.

    b.  Julie's Café, LLC operated two restaurants in Green Bay, Wisconsin; a restaurant in DePere, Wisconsin; and a catering business associated with each restaurant.

    c.  The defendants regularly employed aliens and required the aliens to purchase false identification documents from them, and to work under the assumed identity of a United States citizen.

    d.  The "identity" purchased by an alien included a fraudulent social security account number and a fraudulent birth certificate of a United States citizen.

    e.  The aliens were paid by Julie's Café, LLC in cash. Each week money was deducted from the aliens' wages to pay for the false identity.

    f.  As part of the pattern and practice, on June 15, 2004, the defendants employed at least 20 aliens knowing that said aliens were not authorized to work in the United States.

2

All in violation of Title 8, United States Code, Sections 1324a(a)(1)(A) and (f)(1), and Title 18, United States Code, Section 2, and Title 8, Code of Federal Regulation, § 274a.1(k).

6. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that it is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant, by its duly authorized representative, admits to these facts and that these facts establish its guilt beyond a reasonable doubt:

> Julie's Café, LLC ("Café") is owned and operated by Julie and Stephen Metzler. The Café is a family-style restaurant with three locations. The Café has two restaurants in Green Bay, Wisconsin (411 Military Avenue and 1685 Main Street) and another restaurant in DePere, Wisconsin (1002 Main Avenue). The Café also has a catering division. The daily operation of the restaurant, including but not limited to, hiring, hosting, food ordering, and managing are handled by Stephen Metzler. Julie Metzler was responsible for the cooking, waitressing, and book work.
>
> From approximately 1998 until on or about June 15, 2004, the Café regularly and continually employed illegal aliens, knowing that the aliens were unauthorized to work in the United States. The Café's pattern and practice of employing illegal aliens included providing the aliens with fraudulent identification documents. The fraudulent documents were provided by a former employee who was also an illegal alien. The former employee charged the Metzlers for the fraudulent documents. The aliens paid the Café approximately $1,000 for each identity which included a fraudulent social security card and a fraudulent birth certificate of a United States citizen. The false documents were kept in a vault at the 411 South Military restaurant location by Stephen Metzler. The Café, through Julie Metzler or another bookkeeper, kept records of the aliens' payments for their false identification. The aliens were paid on a weekly basis in cash. Each week money was deducted from the aliens' earnings and recorded as a payment toward their fraudulent identification documents. Over the years, the Café received notification from individuals and/or governmental entities that the social security account numbers of some of their employees were inaccurate. After receiving notification, the Café would change the identity of the illegal alien by recording his or her earnings under a new false identity.
>
> On or about June 15, 2004, the Café employed approximately 24 illegal aliens knowing that the aliens were not lawfully residing in the United States, including "LJS." Stephen Metzler knew that the illegal aliens employed by him were Mexican nationals. Stephen Metzler harbored the aliens by providing them with employment. Stephen Metzler employed the illegal aliens for the sole purpose of ensuring that he

3

could continue to operate his restaurant. Both Julie and Stephen Metzler's primary source of income is the Café. Julie and Stephen Metzler, through Julie's Café, LLC, employed illegal aliens for their personal financial gain.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries a maximum fine of $3,000 fine per alien employed. Count one also carries a maximum of five years' probation and a mandatory special assessment of $125.00.

8. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that it has discussed the relevant statutes as well as the applicable sentencing guidelines with its attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of a pattern and practice of employing illegal aliens as set forth in count one, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant hired or recruited aliens;

Second, the defendant did so for employment in the United States; and

Third, the defendant knew the aliens were unauthorized for employment.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the

4

sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant, by its duly authorized representative, acknowledges and agrees that its attorney in turn has discussed the applicable sentencing guidelines provisions with it to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history for purposes of assisting the sentencing court in determining the defendant's criminal history category under the sentencing guidelines. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history category.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge will consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

5

15. For purposes of determining the defendant's offense level under the sentencing guidelines, the parties agree to recommend to the sentencing court that, based on evidence available to the government and admissible against the defendant, the government is able to establish beyond a reasonable doubt that the defendant employed between 6 and 24 illegal aliens.

## Sentencing Guidelines Calculations

16. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count one is 12 under Sentencing Guidelines Manual § 2L1.1(a)(2).

## Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that a three-level increase for the number of illegal aliens under Sentencing Guidelines Manual § 2L1.1(b)(2)(A) is applicable to the offense level for the offense charged in count one.

6

## Culpability Score

19. The parties agree to recommend to the sentencing court that the applicable base culpability score for the offense charged in the indictment is five (5) under U.S.S.G. § 8C2.5(a).

20. The parties agree to recommend to the sentencing court that for purposes of determining the defendant's culpability score under U.S.S.G. § 8C2.5, one point should be added to the defendant's culpability score pursuant to section 8C2.5(b)(5) because the defendant had ten or more employees and an individual within substantial authority personnel participated in, condoned or was willfully ignorant of the offense.

21. The parties agree to recommend to the sentencing court that for purposes of determining the defendant's culpability score under U.S.S.G. § 8C2.5, one point should be subtracted from the defendant's culpability score pursuant to section 8C2.5(g)(3) because the defendant clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct.

## Sentencing Recommendations

22. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

23. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

24. The government agrees to recommend that a sentence be imposed within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

25. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The parties further understand that the United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the application of the sentencing guidelines and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the Sentencing Guidelines and may impose a reasonable sentence above or below the calculated guideline range.

26. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

27. The defendant, by its duly authorized representative, acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant, by its duly authorized representative, agrees not to request any delay or stay in payment of any and all financial obligations.

### Fine

28. The government and the defendant agree that the defendant does not have the ability to pay the fine otherwise required by U.S.S.G. § 8C2.7 even with the use of a reasonable installment schedule. Therefore, the government and the defendant both agree to recommend to the United States Probation Office and the sentencing court that, pursuant to U.S.S.G. § 8C3.3, the defendant be sentenced to pay a total of $20,000 as a fine.

## Special Assessment

29. The defendant, by its duly authorized representative, agrees to pay the special assessment in the amount of $125.00 prior to or at the time of sentencing.

## Restitution

30. The defendant, by its duly authorized representative, agrees to pay restitution to the individuals whose identities were used by illegal aliens employed by the defendant. The parties acknowledge and agree that the victims of this offense will be identified by the government. Restitution is to include, but not be limited to, tax burdens incurred by the victims based on wages reported to the federal and state authorities by the defendant. The defendant, by its duly authorized representative, understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant, by its duly authorized representative, agrees to cooperate in efforts to collect the restitution obligation. The defendant, by its duly authorized representative, understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

31. In entering this agreement, the defendant acknowledges and understands that in so doing it surrenders any claims it may have raised in any pretrial motion, as well as certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charges against it, it would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.
>
> b. If the trial is a jury trial, the jury would be composed of 12 citizens selected at random. The defendant and its attorney would have a say in who the jurors

9

  would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

 c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

 d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and it would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on its own behalf. The defendant would be entitled to compulsory process to call witnesses.

32. The defendant, by its duly authorized representative, acknowledges and understands that by pleading guilty, it is waiving all the rights set forth above. The defendant, by its duly authorized representative, further acknowledges the fact that its attorney has explained these rights to the representative of the defendant and the consequences of its waiver of these rights.

33. The defendant, by its duly authorized representative, acknowledges and understands that it will be adjudicated guilty of the offense to which it will plead guilty and thereby may be deprived of certain rights.

34. The defendant, by its duly authorized representative, knowingly and voluntarily waives all claims it may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant, by its duly authorized representative, agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

35. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that the defendant has discussed with its attorney and understands that nothing contained in this agreement, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

36. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

38. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

39. The defendant, by its duly authorized representative, understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant, by its duly authorized representative, acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement. The defendant, by its duly authorized representative, acknowledges, understands and agrees that the victims

in this case will include the individuals whose names, birth certificates, and/or social security numbers were used for identification purposes by illegal aliens employed by the defendant.

### Further Action by Internal Revenue Service

40. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant, by its duly authorized representative, acknowledges and understands if it violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant, by its duly authorized representative, further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant, by its duly authorized representative, hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of its breach of this agreement. The defendant, by its duly authorized representative, understands, however, that the government may elect to proceed with the guilty plea and sentencing.

12

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

42. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that it will plead guilty freely and voluntarily because it is in fact guilty. The defendant, by its duly authorized representative, further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the duly authorized representative of the defendant. I am entering into this plea agreement on behalf of the defendant freely and voluntarily and with the full knowledge of the officers and owners of the defendant. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. The attorney for the defendant has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with the attorney for the company and I am satisfied that the company's attorney has provided effective assistance of counsel.

Date: 4-21-05

JULIE'S CAFE, LLC by Stephen Metzler
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: _____

JEFFREY A. JAZGAR
Attorney for Defendant

For the United States of America:

Date: 4/26/05

STEVEN M. BISKUPIC
United States Attorney

Date: 4-26-05

TRACY M. JOHNSON
Assistant United States Attorney

14